Opinion filed September 6, 2019



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00086-CV

_____

## TRISHE RESOURCES, INC.; TRISHE WIND MINNESOTA, LLC; AND TRISHE WIND COLORADO, LLC, Appellants

## V.

## HILLIARD ENERGY, LTD., Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV 50941**

## MEMORANDUM OPINION

After it imposed lesser sanctions against Appellants (collectively, Trishe), the trial court entered "death penalty" sanctions and entered a default judgment against Trishe. This is an appeal from the default judgment and a previous partial summary judgment. Trishe raises three issues on appeal. First, Trishe contends that the trial court abused its discretion when it assessed approximately $2.1 million in sanctions

against Trishe. Second, Trishe argues that the trial court abused its discretion when it awarded Hilliard $33,454.98 in attorney's fees as a discovery sanction. Third, Trishe asserts that the trial court erred when it granted Hilliard a summary judgment for contractual interest on success fees under the parties' contract. We affirm in part and reverse and remand in part.

In August 2014, Trishe entered into a consulting contract with Hilliard whereby Hilliard agreed to assist Trishe in the marketing and sale of wind farms. Hilliard was to be paid a monthly consulting fee. Hilliard was also to receive a "success fee" equivalent to 12% of any sale that occurred during the contract term or 5% of any sale that occurred within eighteen months after the contract terminated.

When Trishe later terminated the contract, Hilliard sued Trishe for breach of contract and alleged that Trishe had failed to pay fees that were due under the contract. Hilliard later filed a motion to compel discovery on the grounds that Trishe had failed to produce financial records—principally bank statements—in response to repeated requests for production. The trial court granted Hilliard's motion and ordered Trishe to produce the documents within thirty days and to pay $1,200 in discovery sanctions.

Hilliard later filed a motion for sanctions and alleged that Trishe had failed to produce the documents and had also failed to pay the sanctions. Hilliard requested that the trial court enter an order by which Trishe would be prohibited from conducting further discovery under Rule 215.2(b)(1) of the Texas Rules of Civil Procedure. Hilliard also asked the trial court to order Trishe to pay Hilliard's legal fees under Rule 215.2(b)(8) and to strike Trishe's pleadings under Rule 215.2(b)(5).

The trial court conducted a hearing on Hilliard's motion. During the hearing, Hilliard's counsel explained that, in addition to the fact that some requested documents were still missing, many of the documents that had been produced

appeared to have been altered or redacted to exclude necessary information. The trial court granted the motion. In its order, the trial court prohibited further discovery by Trishe, struck Trishe's pleadings, and ordered Trishe to pay $33,454.98 in legal fees and court costs to Hilliard.

Hilliard also filed a motion for partial summary judgment for unpaid consulting and success fees and expenses from the sales of wind farms in Ohio and Minnesota. Trishe did not respond. The trial court granted the motion and awarded Hilliard a total of $344,848.15 in damages and contractual interest. The summary judgment order left open Hilliard's claim for additional damages related to the sale of the Ohio wind farm. Trishe was to be paid under the Ohio sales contract in a series of payments for specified construction milestones. Hilliard's success fee was payable only if, and as, Trishe received payment.

Hilliard filed yet another motion for sanctions when Trishe continued to fail to produce the required documents and continued to fail to pay the ordered sanctions. Hilliard requested a default judgment under Rule 215.2(b)(5) and requested that the trial court enter a deemed finding that "the Ohio wind farm was built to its full potential, meaning that milestone payments due to [Hilliard] will be calculated as though each milestone was met timely and to its full potential" as identified in the original contract. Hilliard argued that it was due a total success fee of $2,114,220. Therefore, Hilliard "request[ed] that Trishe be ordered to pay sanctions in the amount of $2,114,220." Trishe did not appear at the hearing on Hilliard's motion. The trial court entered a default judgment in which it awarded Hilliard:

- the previously granted sanctions of $1,200;
- the previously granted sanctions of $33,454.98;
- damages of $344,848.15, as previously granted in the summary judgment order;

- sanctions in the amount of $2,114,220; and

- attorney's fees of $4,396.24.

We will address Trishe's first issue on appeal. In that issue, Trishe contends that the trial court abused its discretion when it assessed approximately $2.1 million in sanctions against Trishe.

We review a trial court's ruling on a motion for discovery sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *Id.* at 838–39; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). An appellate court reviews the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Tidrow v. Roth*, 189 S.W.3d 408, 412 (Tex. App.—Dallas 2006, no pet.).

A trial court has discretion to impose sanctions for discovery abuses under Rule 215 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 215. If a party fails to comply with an order compelling discovery or abuses the discovery process, a trial court can strike the party's pleadings or render a judgment by default after notice and hearing. TEX. R. CIV. P. 215.2(b)(5), 215.3. Any sanction by the trial court that is based on the party's conduct during discovery, and by which a trial court adjudicates a party's claim without regard to the merits, constitutes a "death-penalty" sanction. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001).

Discovery sanctions serve three purposes: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish parties for violating the discovery rules. *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95 S.W.3d 656, 659 (Tex. App.—Dallas 2002, no pet.). When an appellate court determines whether sanctions imposed are just, it is to

4

consider (1) whether there is a direct relationship between the offensive conduct and the sanctions imposed and (2) whether the sanctions are excessive. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Further, the trial court should always consider and test lesser sanctions before imposing case-determinative sanctions. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

*TransAmerican*, like the present case, involved the imposition of a case-determinative sanction. The court discussed some of the restraints on such extreme punishment:

> Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it. . . . Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*TransAmerican*, 811 S.W.2d at 918 (citations omitted).

Pursuant to Trishe's timely request, the trial court filed findings of fact and conclusions of law. Although findings of fact and conclusions of law extend the appellate timetables under Rule 26.1(a)(4) of the Texas Rules of Appellate Procedure, they are not required after a judgment rendered as sanctions. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997). Thus, an appellate court need not give findings of fact made after a judgment rendered as sanctions the same deference as findings of fact made after a trial on the merits. *Id.* at 442; *see Chrysler*, 841 S.W.2d at 852. In this case, however, the trial court's findings are helpful because they are supported by the record and are "specifically tied to an appropriate

legal standard," the standard set forth in *TransAmerican*. *See Chrysler*, 841 S.W.2d at 853.

Among the pertinent facts found by the trial court, excluding record references, are the following:

4. Trishe Defendants sold the wind projects within the terms of the Consulting Agreement.

. . . .

6. Trishe Defendants did not pay [Hilliard] the percentage of the sales price for the wind projects and failed to pay for substantial consulting and land management fees and expenses to [Hilliard].

7. [Hilliard] filed suit on January 9, 2015[,] against the Trishe Defendants alleging failure to pay [Hilliard] according to the Agreements as the projects had been sold.

8. The sales price of these projects and amounts received are relevant and the ultimate issue of [Hilliard's] cause of action and the Trishe Defendants had the sales and financial information available to the Trishe Defendants.

9. The sales documents designated that funds from the sale were to be deposited in an account at Citibank. The Trishe Defendants never produced any documentation from any account at Citibank.

10. On April 24, 2015, [Hilliard] served Requests for Production on [Trishe] seeking the sales and financial documents relating to the sale of the wind projects and amounts received and amounts to be received during the completion of the phases.

11. On June 25, 2015, [Hilliard] served further Requests for Production on [Trishe] seeking the financial documents relating to the sale of the wind projects and the amounts received by the Trishe Defendants.

12. Despite these requests, Trishe Defendants failed to provide the relevant information to [Hilliard].

13. On March 31, 2016, . . . [Trishe] acknowledged the request for the financial documents and promised to provide the documents.

[Hilliard's counsel twice sent correspondence to Trishe's counsel again seeking the financial documents which had been previously requested and promised.]

. . . .

17. On August 11, 2016, the Court ordered the Trishe Defendants to produce certain records [and sanctioned Trishe $1,200]. The Trishe Defendants flagrantly and in bad faith failed to comply with the Court's order.

. . . .

19. Trishe Defendants produced a few documents, but those documents were intentionally redacted to hide the relevant information.

20. Trishe Defendants were intentionally attempting to conceal whether Trishe Defendants had received in excess of $23,000,000.00 from the sale of these projects.

21. On November 2, 2016, this Court granted sanctions prohibiting Trishe Defendants from conducting discovery, payment of legal expenses and struck Trishe Defendants' pleadings.

22. Despite these escalating sanctions, Trishe Defendants disregarded the orders to produce the sales and financial information.

. . . .

24. The discovery abuses are the result of the actions of the party Trishe Defendants and not of their legal counsel.

. . . .

26. The discovery withheld constitutes material evidence related to Trishe Defendants liability in the case.

27. Despite all of the sanctions, Trishe Defendants continued to repeatedly and systematically refuse to comply with the Court Orders and refused to produce the financial information.

. . . .

29. The wind projects were sold, [Hilliard] was due its share of the proceeds and the Trishe Defendants simply would not disclose the truth regarding the sales proceeds.

30. Despite imposing lesser sanctions on Trishe Defendants, no lesser sanction imposed by the Court was effective to obtain compliance with the Court's Orders.

31. Trishe Defendants sold the wind projects and owed [Hilliard] a share of the proceeds. Trishe Defendants raised no meritorious defense as to why [Hilliard] was not entitled to its share of the proceeds. Trishe Defendants' only defense was to refuse to divulge the financial and sales information.

32. Trishe Defendants' conduct [was] intentional.

Among the documents sought by Hilliard, and not produced by Trishe, were unaltered and complete bank statements and schedules that would provide information about the value and price of the wind farm sales. Trishe failed to produce the requested information, despite Hilliard's repeated requests and the trial court's orders. The requested information was relevant to Trishe's liability on Hilliard's claims, which necessarily required a showing of how much Trishe was paid for the wind farms. Trishe correctly argues that Hilliard failed to prove its damages. But that failure is because of Trishe's conduct: Without the requested documents and information, Hilliard was unable to prove its claims because the calculation of Hilliard's fee would be impossible.

At oral argument before this court, Trishe's counsel acknowledged that Trishe's conduct prevented Hilliard from getting the information Hilliard sought. Trishe admits as much in its brief:

> Trishe's conduct may have left Hilliard unable to prove whether it was entitled to additional damages from Trishe's sale of the Ohio wind farm. And Hilliard's potential damages might have reached $2.1 million (the trial court record contains no evidence that Trishe received any milestone payment, so no one can know Hilliard's damages, if any, based on this record).

Trishe argued, however, that Hilliard chose the wrong tool to obtain judicial relief. We disagree.

Trishe also asserts that the evidence conclusively establishes that Trishe's counsel is to blame for some of the discovery abuses in this case. Trishe contends, therefore, that the trial court abused its discretion when it assessed the full sanction amount against Trishe.

The Texas Rules of Civil Procedure provide that a party, his attorney, or both may be subject to sanctions. TEX. R. CIV. P. 13, 215.1(d), 215.2(b)(8). However, the trial court must determine whether the party or its counsel is to blame for the discovery abuse; the trial court should not punish a party for its counsel's conduct in which it is not implicated. *TransAmerican*, 811 S.W.2d at 917. Here, Trishe's trial counsel stated affirmatively on the record that he asked Trishe for all the bank account information and that he "didn't redact anything from any of the documents. If [Trishe] did, they certainly didn't tell me they were going to or ever ask me about it." Trishe's trial counsel also pointed out that the lack of discovery compliance was Trishe's fault:

> This isn't an unwillingness to participate in litigation. The reality and the cause for this tardiness is the unfortunate reality of Trishe's circumstances. Thanks in large part to this lawsuit, this company is

9

essentially not functioning. They have no day-to-day employees, no one minding the store, so to speak, and it's essentially why they were late.

It took forever to finally get someone to pay attention. In fact, it specifically took me asking for their consent to my Motion to Withdraw before somebody finally said, okay, I'll -- in addition to this other job I'm doing now, I'll sort of take back up the reins on this.

Given these statements from Trishe's trial counsel, we cannot say that the trial court's finding—that Trishe, not its trial counsel, was to blame for the discovery abuses—was arbitrary, unreasonable, or without reference to any guiding rules or legal principles.

Trishe points us to *Lopez v. La Madeleine of Texas, Inc.*, in which the Dallas Court of Appeals reversed the trial court's decision to assess as sanctions the amount sought by the plaintiff as damages. There, the court held that the "requested sanction does not compensate [plaintiff] for expenses incurred in the litigation caused by the abuse, nor is it discovery expenses or court costs. Rather, we agree . . . that [the] requested sanction is compensation for his personal injury claim." 200 S.W.3d 854, 865 (Tex. App.—Dallas 2006, no pet.). However, *Lopez* centered on Rule 215.2(b)(2), which authorizes the trial court to impose sanctions in the form of discovery expenses or court costs. *See id.* We do not quarrel with that general proposition. However, in this case, the trial court also granted Hilliard's default judgment in accordance with Rule 215.2(b)(5). Our decision in *Crystal River Oil & Gas, L.L.C. v. McClymond, Inc.*, No. 11-00-00158-CV, 2000 WL 34234440 (Tex. App.—Eastland Nov. 30, 2000, no pet.) (not designated for publication), is more analogous.

Similar to *Crystal River*, this case involves case-determinative sanctions and the previous imposition of lesser sanctions to no avail. Further, Hilliard needed the

10

withheld documents in order to know whether Trishe had actually been paid and, thus, whether Hilliard was owed its fee, as well as how much that fee would be. Similarly, Trishe's defense that Trishe had not yet been paid would have been solved by the production of the financial statements, yet Trishe categorically refused to produce them.

Based on the record and the trial court's findings, the sanctions imposed met both criteria set forth in *TransAmerican*. The trial court determined that Trishe, not its attorney, was at fault for failing to respond properly to Hilliard's discovery requests and to the trial court's orders; Hilliard could not prove its damages because of Trishe's conduct. Thus, there is a direct relationship between the offensive conduct and the sanctions imposed. Further, the trial court found that Trishe "flagrantly and in bad faith" refused to produce the documents and comply with the trial court's orders. The record supports these findings. Finally, the trial court ordered lesser sanctions against Trishe before granting default judgment. The sanctions are not excessive. The trial court did not commit an abuse of discretion. We overrule Trishe's first issue on appeal.

In its second issue, Trishe argues that the trial court abused its discretion when it awarded Hilliard $33,454.98 in attorney's fees as a discovery sanction because that figure represents all fees in the lawsuit through the date of the first sanctions motion. We agree.

Rule 215.2(b)(8) authorizes a trial court to award "the reasonable expenses, including attorney fees, caused by the failure" to respond. TEX. R. CIV. P. 215.2(b)(8). While Trishe's appeal was pending before this court, the Supreme Court of Texas issued *Nath v. Texas Children's Hospital*, 576 S.W.3d 707 (Tex. 2019) (per curiam), which clarified the evidentiary standard of proof for attorney's fees awarded as a sanction. *See Nath*, 576 S.W.3d at 710 ("Although this

11

case deals with attorney's fees awarded through a sanctions order, the distinction is immaterial because all fee-shifting situations require reasonableness."). After *Nath*, proof of reasonableness is required when attorney's fees are assessed as sanctions. *See id.* In *Nath*, the court explained that, "[b]efore a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party." *Id.* at 709 (quoting *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008)). Thus, the party that seeks a sanction of attorney's fees bears the burden "to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Id.* (quoting *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016)).

Generally, although contemporaneous billing records are not required to prove up attorney's fees, legally sufficient evidence to establish a reasonable and necessary fee should include a description of the particular services performed, who performed the services, approximately when the services were performed, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at *20, *22, *23 (Tex. Apr. 26, 2019) (cited in *Nath*, 576 S.W.3d at 710 ("[T]he standard for fee-shifting awards in *Rohrmoos* likewise applies to fee-shifting sanctions.")).

In its motion for sanctions, Hilliard argued that "a large portion of Plaintiff's legal fees have been devoted to the pursuit of the discovery process" and that Hilliard was "unable to pursue its claim" due to the refusal to produce the records. At the hearing, Hilliard's counsel gave a cursory description of her firm's legal bills but failed to explain what portion of those bills was related to Trishe's discovery abuses,

12

the sanctionable conduct in this case. Hilliard's counsel also did not provide enough information to meet the requirements articulated by the Supreme Court of Texas in *Nath* and *Rohrmoos*. Hilliard's evidence lacks the substance required to uphold a fee award and, thus, is legally insufficient. *See Nath*, 576 S.W.3d at 709–10; *Rohrmoos*, 2019 WL 1873428, at *25. We note that neither the trial court nor the attorneys had the benefit of *Nath* when this case was heard in the trial court. Further, the attorneys did not have the benefit of *Nath* when they briefed this case.

We sustain Trishe's second issue and reverse the trial court's sanction award of $33,454.98 in attorney's fees. However, in light of *Nath*, we remand the case to the trial court in the interest of justice for further proceedings limited to a determination of Hilliard's claim for attorney's fees as related to its sanction claim. *See* TEX. R. APP. P. 43.3(b).

In its third issue, Trishe asserts that the trial court erred when it awarded summary judgment to Hilliard for contractual interest on success fees. We review a trial court's summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, No. 17-0850, 2019 WL 2147205, at *3 (Tex. May 17, 2019). In our review of a traditional motion for summary judgment, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Id.* To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KMS Retail Rowlett*, 2019 WL 2147205, at *3.

In its motion for partial summary judgment, Hilliard sought 1.5% interest per month on the two unpaid success fees. The trial court granted Hilliard's motion and awarded 1.5% interest on the Minnesota wind farm success fee and 1.5% interest on

the Ohio wind farm success fee. Trishe asserts that those awards are improper. We agree.

We begin our analysis with the express language of the contract. If a written contract is so worded that it can be assigned a certain or definite legal meaning or interpretation, it is not ambiguous, and we will construe the contract as a matter of law. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 416 S.W.3d 137, 144 (Tex. App.— Eastland 2013, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

The parties structured their contract in such a fashion as to make its interest provisions inapplicable to success fees. There is no provision in the contract in which the parties provided for interest on success fees. The parties did provide for late payment charges on certain past-due amounts, but those provisions do not apply to success fees. The parties provided for success fees in a different section of the contract, a section that bears the title "Compensation." The provision that concerns payment of success fees contains no reference to any invoices by Hilliard. In the success fee provisions of the contract, the parties instead provided that "[Hilliard] shall be paid [each Success Fee] prorata on the basis of the cash as and when received [by Trishe as a result of the sale of a project]." The parties did not make any provision for the payment of interest on unpaid success fees. The only provision relating to interest is contained in the section of the contract covering expenses, and the parties did not provide for that same charge in the section of the contract that governs success fees.

Hilliard argues that the plain language of the contract reveals that there is no limitation on contractual interest. Hilliard points out that "[t]he interest provision in the [contract] states: 'A late payment charge of 1.5% per month shall be payable on *any* outstanding balances.'" Hilliard further asserts: "There is no limitation as to

14

which outstanding balances shall incur the fee. Simply put '*any*' means 'any.'" However, Hilliard's argument ignores the first sentence of that very provision, found in the expenses section, which reads: "[Trishe] shall pay all invoices within thirty (30) days of the receipt thereof." Thus, in context, the interest provision of 1.5% would apply to the invoices for billed expenses that go unpaid, not to success fees as Hilliard argues. "Any" refers to outstanding balances, and under the contract, an outstanding balance would refer to what is owed on Hilliard's invoices for expenses, not to the success fee. As we have said, success fees are covered in a different section of the contract. Therefore, the trial court's grant of summary judgment to Hilliard for contractual interest on success fees under the parties' contract was improper. We sustain Trishe's third issue.

We reverse the judgment of the trial court insofar as it provides for the award of $33,454.98 in attorney's fees and for the accrual of 1.5% interest on the Ohio success fee and the Minnesota success fee, and we remand those matters to the trial court for further proceedings consistent with this opinion. By our ruling, we are not to be taken as condoning Trishe's discovery abuses as found by the trial court. In all other respects, we affirm the judgment of the trial court.


September 6, 2019                 JIM R. WRIGHT

Panel consists of: Bailey, C.J.,         SENIOR CHIEF JUSTICE
Wright, S.C.J.,[1] and Dauphinot, S.J.[2]

Willson, J., and Stretcher, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

[2]Lee Ann Dauphinot, Senior Justice (Retired), Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.