# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-21-00317-CV

---

**Jerry Lavone Lively Jr., Appellant**

**v.**

**Michelle Anne Lively, Appellee**

---

**FROM THE 274TH DISTRICT COURT OF COMAL COUNTY**
**NO. C2017-1208C, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Jerry Lavone Lively Jr. appeals from a final decree of divorce. In seven issues, he challenges the trial court's (1) grant of his counsel's motion to withdraw, (2) award of sanctions against him for discovery abuse, and (3) failure to rule on his request for temporary orders awarding him community funds to retain counsel. For the reasons explained below, we affirm in part and reverse and render in part.

## BACKGROUND

In July 2017, appellee Michelle Lively filed an original petition for divorce.[1] Jerry filed his original answer in March 2018. On July 5, 2018, Michelle filed a certificate of written discovery, certifying that she had propounded upon Jerry requests for production and inspection, written interrogatories, Rule 194 requests for disclosure, and requests for admissions. By Rule 11

---

[1] Because the parties share the same last name, we will refer to them by their first names.

agreement filed with the trial court, the parties extended the deadline for Jerry's discovery responses to August 22, 2018. On August 22, Jerry filed a written certificate of discovery stating that he had served upon Michelle his responses to her requests for discovery.[2]

On October 29, Jerry's counsel, Gina Jones, filed a motion to withdraw as counsel, alleging that she was "unable to effectively communicate with Jerry . . . in a manner consistent with good attorney-client relations." The motion stated that there were no pending settings or deadlines, including discovery deadlines, in this case and that there had not been any hearings in the case. On October 31, the motion to withdraw was set to be heard on November 28, 2018.

On November 8, Michelle filed a motion to compel discovery and for sanctions, asserting that Jerry's discovery responses were inadequate because he had produced no documents at all and had not objected to the time and manner of production or inspection and because his responses to certain of her interrogatories were nonresponsive. The motion to compel was set for hearing on November 16, but after Jerry filed a motion for continuance due to a scheduled medical procedure, the parties filed a Rule 11 agreement documenting their agreement to have Michelle's motion to compel and for sanctions heard along with Jones's motion to withdraw on November 28.

At the hearing, the trial court proceeded to hear both attorneys' arguments on the motion to compel and for sanctions. In the course of that argument, Jones also briefly described her communication issues with Jerry. After hearing Jones's argument on behalf of Jerry responding to the motion to compel and for sanctions, the trial court granted Jones's motion to withdraw and gave Jerry, now acting pro se, the opportunity to argue further on his own behalf.

---

[2] Jerry also propounded discovery requests upon Michelle. She filed written certificates of discovery documenting her service of responses upon Jerry. No motion to compel was ever filed related to Michelle's discovery responses and they are not at issue in this appeal, so we will not recite the particulars of Michelle's discovery-related filings here.

2

After hearing his argument, the trial court orally granted the motion to compel and for sanctions, ordering that Jerry provide documents and discovery responses by January 2, 2019, at 5:00 p.m., awarding $2,000 in attorneys' fees payable to Michelle's counsel on or before January 2, and providing that Jerry was prohibited from propounding any additional discovery. The trial court memorialized its oral rulings in an order signed on December 7, 2018. On January 2, 2019, Jerry filed pro se notices of appeal in this Court from the trial court's orders granting the motion to withdraw and the motion to compel and for sanctions. Those appeals were dismissed for want of jurisdiction in February 2019. *See Lively v. Lively*, Nos. 03-19-00005-CV & 03-19-00006-CV, 2019 WL 988275, at *1 (Tex. App.—Austin Feb. 28, 2019, no pet.) (mem. op.).

In December 2018, Michelle filed a motion for temporary restraining order and set a hearing for January 9, 2019. On January 8, 2019, new counsel, Kimbrel Brown, made an appearance on Jerry's behalf and requested a continuance of the January 9 hearing. The trial court subsequently granted an ex parte temporary restraining order, restraining Jerry from threatening Michelle and from various forms of harassment of Michelle. On April 2, Michelle filed a motion for mediation, a motion for temporary orders, and a motion for sanctions. Michelle's motions were set for hearing on April 17.

On April 8, Brown filed a motion to withdraw, asserting that good cause existed for his withdrawal "because he is unable to effectively communicate with Jerry . . . in a manner consistent with good attorney-client relations." Jerry did not consent to the motion, stating in a letter to the court that he believed it was improper for the court to allow Brown to withdraw because

he had never consented to Brown's representation of him.[3]  On April 17, 2019, the trial court granted Brown's motion to withdraw and Michelle's motion for temporary orders.

On January 29, 2020, Michelle filed a motion to waive mediation, asserting that she would be requesting that a final hearing be set, and that mediation should be waived because there was a pending felony charge alleging that Jerry assaulted Michelle and a pending case against Jerry alleging that he violated Michelle's protective order more than 2 times within 12 months. The trial court granted her motion on March 4, 2020.

On February 6, 2020, Jerry filed a motion for temporary orders, seeking an award of funds from the community estate under Texas Family Code Section 6.502(a)(4) to secure counsel and pay attorney's fees and expenses and seeking temporary support and living expenses as provided by Texas Family Code Section 6.502(a)(2).  *See* Tex. Fam. Code § 6.502(a)(2), (4). Jerry further requested a stay of all proceedings until the funds under Section 6.502(a)(4) could be paid and he could retain an attorney.  The record does not reflect that this motion was ever set for hearing prior to February 3, 2021.

On February 3, 2021, at a hearing on Michelle's and Jerry's motions for temporary orders, the parties settled the case.  After Jerry and Michelle testified that they agreed to the terms, the trial court orally granted the divorce and rendered it effective immediately.  The court conducted another hearing on May 12, 2021, on additional motions filed by the parties, including

---

[3]  According to Jerry, Brown "apparently had a payment contract with a third party for services," but Jerry asserted that he never consented to the representation as required by Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct.  *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.06 cmt. 12, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) ("A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client.").

Michelle's motion to enter a final decree of divorce and Jerry's motion for relief from the December 7, 2018 sanctions order. The court denied Jerry's motion for relief. The trial court signed the final decree of divorce on July 12, 2021. This appeal followed.

## ANALYSIS

On appeal, Jerry challenges the trial court's grant of Jones's motion to withdraw, its award of sanctions against him for discovery abuse, and its failure to rule on his request for temporary orders awarding him community funds to retain counsel.

### I.       Motion to Withdraw

Jerry raises several issues related to Jones's motion to withdraw and seeks to have this Court reverse the trial court's ruling granting counsel's motion to withdraw and remand the case for a new trial. Jerry contends that the trial court abused its discretion by granting the motion to withdraw because (1) the motion did not comply with the requirements of Texas Rule of Civil Procedure 10; (2) the court failed to ensure that counsel's withdrawal would not have a material adverse effect on Jerry's interests in violation of Texas Disciplinary Rule of Professional Conduct 1.15; (3) the trial court failed to allow Jerry to oppose counsel's withdrawal at the hearing, which violated Jerry's due-process rights; and (4) the trial court should not have proceeded to hear the motion to compel after granting counsel's motion to withdraw. We consider and address these issues together.

We review a trial court's ruling on a motion to withdraw for an abuse of discretion. *Thompson v. Thompson*, 387 S.W.3d 769, 770 (Tex. App.—El Paso 2012, no pet.). While a trial court abuses its discretion when it grants a motion to withdraw that does not comply with Rule 10's requirements, "such error may be harmless if the court allows the party time to secure new

5

counsel and time for the new counsel to investigate the case and prepare for trial." *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2002, pet. denied) (citing *Walton v. Canon, Short & Gaston*, 23 S.W.3d 143, 149 (Tex. App.—El Paso 2000, no pet.)); *see also Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) ("Therefore, when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial.").

### A. Texas Rule of Civil Procedure 10

Under Rule 10 of the Texas Rules of Civil Procedure, an attorney may only withdraw from representing a party upon written motion, "for good cause shown." *See* TEX. R. CIV. P. 10. Although Rule 10 does not define "good cause," courts look to the Texas Disciplinary Rules of Professional Conduct for guidance when considering motions to withdraw because "they articulate considerations relevant to the merits of such motions." *In re Posadas USA, Inc.*, 100 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, orig. proceeding). If another attorney is not to be substituted as the party's attorney, Rule 10 requires that the motion state the following:

- a copy of the motion to withdraw has been delivered to the party,

- the party has been notified in writing of their right to object to the motion,

- whether the party consents to the motion,

- the party's last known address, and

- all pending settings and deadlines.

Tex. R. Civ. P. 10.

6

Jerry asserts that the motion to withdraw did not comply with the requirements of Rule 10 of the Texas Rules of Civil Procedure because it did not "properly indicate whether the party consents to the motion." *See Gillie*, 65 S.W.3d at 221 (holding trial court abuses its discretion when it grants motion to withdraw that does not comply with Rule 10's requirements). Jerry does not dispute that the motion complied with all other requirements of Rule 10. The motion stated that Jerry "has consented to the motion as evidenced by his signature on this motion." Jerry did not sign the motion. Thus, the absence of Jerry's signature indicates that he did not consent to the motion. While the better practice might be to explicitly state that the party does not consent to the motion, we cannot conclude that counsel's motion in this case did not comply with Rule 10's requirements.

## B. Rule 1.15 of Texas Disciplinary Rules of Professional Conduct

Jerry asserts that the trial court abused its discretion by granting the motion to withdraw because the court failed to ensure that his counsel had complied with the rules of professional conduct. Specifically, Jerry complains that his attorney should not have been allowed to withdraw because withdrawal could not be "accomplished without material adverse effect on the interests of the client." Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(1), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Jerry argues that although his attorney represented in her motion to withdraw that "discovery was essentially complete," in his opinion, Michelle's responses were incomplete, and his attorney had not taken any action to address those incomplete responses. He further argues that the trial court's grant of Jones's motion to withdraw at the hearing had a material adverse effect on his interests, asserting that his counsel failed to argue that Jerry "had already produced everything possible that had been requested," that

Michelle "already had the requested discovery items within her possession," and that "significant discovery issues were still in question," leading to the trial court's granting of the motion to compel, which precluded him from further discovery and required him to pay $2,000 in attorneys' fees as sanctions.

Based on our review of the timing of the motion to withdraw, which was filed before the motion to compel, and our review of the transcript from the hearing on both motions, we conclude that the trial court did not fail to ensure that Jones complied with the rules of professional conduct. Jones's motion to withdraw was filed and served on Jerry and on Michelle's counsel on October 29, 2018. The motion was set for hearing on November 28, 2018. Michelle subsequently filed the motion to compel discovery and for sanctions, which she originally set for November 16 but agreed to move—at Jerry's request—to the November 28 motion-to-compel setting. At the hearing, Jones requested that the motion to withdraw be heard and ruled upon first, in part because Jerry had begun communicating directly with Michelle's counsel's office after Jones filed her motion to withdraw. Michelle's counsel, Barbara Ancira, requested that the motion to compel be heard first "because of the tenor of the communications that I've gotten directly from [Jerry], even though Ms. Jones has been representing him" and because the discovery motion concerned in part records that Jones "clearly has possession of."

Jones represented to the court that she had informed Ancira that the only documents she had in her possession were Jerry's contract with Jones and billing statements, which she had not turned over because Jerry "was not comfortable," but that she had brought copies with her so that they could be redacted to give to Ancira. She further represented to the court that she had "been trying to get the documents as part of the [motion to] compel. [Jerry] and I have been unable to communicate for well over a month. And then that's when he also start[ed] cc'ing Ms. Ancira's

8

office into a lot of those communications." She asked to be allowed to withdraw first since that motion was filed first. Ancira responded that while she had not responded to Jerry's direct communications with her, she requested that the court hear the motion to compel and for sanctions with Jones still representing him and being able to respond because the tenor of Jerry's communications included a letter threatening Michelle with criminal prosecution, "trying to turn her in, trying to ruin her job, and that sort of thing." The trial court proceeded to ask questions and allow argument from both attorneys related to the motion to compel and for sanctions.

During her argument, Ancira explained to the court that Jerry had made no objections and had not asserted attorney-client privilege to support redacting the contract or the billing statement, so she requested that the court compel Jones and Jerry to produce those documents "as is." Ancira represented to the court that no documents had been produced in response to the motion to compel, even though Jerry's response had indicated that he would produce documents, including documents that would be in Jerry's possession or control, such as his employment and tax information, bank account information, retirement account information (including records related to a $450,000 retirement account withdrawal), debt information, and credit-report information. She requested that the court compel Jerry to produce the documents or strike his pleadings, that it not take into consideration any of Jerry's debt in the property division because he refused to provide any information about his debt, and that Jerry not be allowed to make a claim against the community property because his only response to the interrogatories about what property he believed to be community property was that Michelle "has possession of all of that and knowledge of all of that." Ancira further requested that Jerry be compelled to provide answers to the interrogatories identified in the motion and that he be prohibited from

9

further discovery while the case is pending and that he pay Ancira's attorneys' fees in the amount of $2,500.

Jones asserted that because Jerry withdrew the retirement money before the divorce was filed, Michelle "knows full well that she got her fair share of that" because they split it in anticipation of the divorce. Ancira responded that even if Jerry was claiming the funds were evenly disbursed, Michelle was entitled to see account statements to verify the amount that was cashed out and where it was deposited. Jones responded to Ancira's argument by stating, "[F]or response, as far as those interrogatories, it goes back to my motion to withdraw. I can only deal with the information I'm given from my client. And so those are the answers that were provided." Jones further pointed out that no final hearing date had been set, that "[t]here is plenty of time to supplement those items," and that Michelle has "similar access to the majority" of the requested documents because the parties had been married for almost 20 years and had only been separated for the prior eighteen months. Jones argued that Jerry should only be compelled to produce documents for accounts for which he was the sole owner or accounts from July 2016 forward because that is the only information Michelle would not already have access to.

Ancira rebutted these arguments by pointing out that Jerry needed to respond to the interrogatories with an inventory of what items he believed to be part of the community-property estate (both assets and debts) if he wanted any of that property to be part of the property division. Moreover, she argued that even if Jerry thought Michelle had possession of certain documents, he should produce them if he has possession of them because he did not timely object to the requests for production. *See* Tex. R. Civ. P. 193.2(a) (party must make any objection to written discovery in writing within time for response), (b) (party must comply with as much of request to which party has made no objection unless unreasonable under circumstances to do so before obtaining

10

ruling on objection), (e) (objection not made within time required is waived); *id.* R. 196.2 (written response and objections to requests for production and inspection due within 30 days after service of request); *id.* R. 197.2 (written response and objections to interrogatories due within 30 days after service of interrogatories). At this point, Jerry requested that he be allowed to speak and asked if he could talk to the judge, to which the judge responded, "Not really right now." Jones reurged her motion to withdraw so that Jerry could go ahead and represent himself pro se. She further stated that there had been "an insinuation that there's both going to be a grievance and a lawsuit filed against me," so she wanted to reurge the motion to withdraw so that Jerry "can proceed as he sees fit at this hearing since we have covered most of the issues in the sanctions."

The court did not rule at that point but it stated:

> Before I go any further, I am going to say that if there's not been objections to the discovery, then—that have been timely filed such that the other side, in accordance with the rules of procedure, move[s] forward in regard to those objections to the extent they see fit—if there's not been timely objections, nor production to this date, that ultimately one of two things happen: Either those are produced in short order; or if not produced within a reasonable short order period of time, then any claims regarding responsive answers to that discovery to which there was not an objection is ultimately going to be prohibited or precluded.
>
> . . . [M]y point in saying that is that before I do anything else or go any further, are you satisfied with the record as is here today . . . Ms. Jones . . .?

Jones reiterated that "we have been trying to get the documents . . . if I could go through them with [Jerry], because he has lived in Tennessee, and see if there are actual objections to be made . . . ," at which point the court interjected, "Well, it's too late to make the objections." Jones then requested that Jerry be given at least a month to supplement the answers. Ancira pointed out that the responses had been served on August 22, and the motion to compel had been on file since

11

November 8, arguing, "He's had plenty of time." The court responded, "I'm not going to open the door to objections."

Jones again asked the court to give Jerry 30 days to produce the documents, arguing that "this is such a large amount of things, I think he does need 30 days," and also asserting that Michelle had provided them very limited documents at this point as well. Ancira pointed out that no discovery motion had been filed against Michelle and that Michelle had "not gotten any information from [Jerry] or documentation from him," so she suggested that the court give him two weeks to produce the requested documents and adequately answer the interrogatories, and if he did not, to set the case for trial and move forward. She also asked for her attorneys' fees for preparing and arguing the motion to compel.

The court stated that it would grant the motion to withdraw and that it wanted to review in camera the documents (Jerry's representation contract and Jones's billing statement) that Jones had in her possession before producing them to Michelle. After Jones was excused from the hearing, the court asked Jerry if he wished to respond briefly, to which Jerry responded, "Well, I actually had planned on opposing her motion to withdraw, but I wasn't allowed to speak, so I guess now I'm pro se." He further stated, "I definitely object," asserting that he did not have the documents that Michelle asserted he had and that he had evidence (which he did not tender to the court) that Michelle had scanned and e-mailed him the documents she was asking for when she asked him to do taxes. He stated that he left Texas with possessions that were in the back of a ten-foot trailer, that Michelle had the rest of the possessions from the 3,900 square-foot house, and that he had no money. He then stated, "You can award her legal fees, if you want. There's nothing to get. I'll be filing bankruptcy immediately after this anyway."

12

Jerry further argued that the documents that Michelle sought in discovery were with the Comal County Sheriff, the Knox County Sheriff, and the 25th Military Police Detachment Fort Sam Houston, and that she should get those e-mails from the police. Ancira responded that at a minimum, Jerry should have electronic communications in his possession or control, as well as the bank records or records from his employer concerning the $450,000 retirement withdrawal, plus in the absence of any objections, he should produce anything he had possession of, regardless of where it came from. Ancira also suggested that the court did not need to go piecemeal through the multiple discovery requests for which relief was sought, it could just compel Jerry to respond and then either strike his pleadings or preclude him from asserting matters related to those responses at trial.

At that point, the court stated that it would grant the motion to compel and order that discovery must be provided by January 2, 2019, at 5:00 p.m. and that it would award $2,000 in attorneys' fees. Ancira also requested that Jerry be prohibited from seeking any further discovery in the case, whether he retained counsel or not. Jerry responded that he should be able to request at least the items he had already requested, which Michelle had objected to. The court informed Jerry that "[w]ith proper motion, proper setting, you can certainly address those . . . that existing discovery. But at this juncture, you know, without leave of court, we're not going to do any additional discovery." The court reiterated when discussing the proposed order with Ancira, "If he needs to assert some motion to compel . . . he can certainly do that as well, but he could ask for leave of court. . . . For additional discovery."

With this context from the record in mind, we hold that the trial court did not fail to ensure that Jones complied with Rule 1.15 of the disciplinary rules. On Jerry's behalf, Jones argued against the motion to compel before the trial court granted the motion to withdraw, and she

13

in fact made the arguments that Jerry contends she failed to make. Jerry's loss on the merits of the motion to compel cannot be attributed to Jones's withdrawal. Instead, as we discuss in more detail below, it was a result of his failure to timely object or sufficiently respond to Michelle's discovery requests.[4]

### C. Procedural Due Process

Jerry also argues that his due-process rights were violated because he was not allowed to argue against his counsel's withdrawal at the hearing. *See* U.S. Const. amend. XIV, § 1 (providing that no State shall "deprive any person of life, liberty, or property without due process of law"); Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."); Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."). We agree with Jerry that the trial court erred by not asking either Jones or him whether he consented, especially because Jerry had not signed the motion to indicate his consent and he had appeared at the hearing after being notified in writing of his right to object to the motion. Moreover, after the court had granted the motion to withdraw and excused Jones, when Jerry indicated that he had planned to oppose Jones's motion, the trial court could have allowed Jerry to

---

[4] We also address in more detail below Jerry's argument that the granting of the motion to compel left him "in a position that was unrecoverable and caused the entire outcome of the trial to become unquestionably, and unjustly in favor of [Michelle]." We disagree with Jerry's argument that the trial court abused its discretion by granting "death-penalty" sanctions—the sanctions were not death-penalty sanctions because they did not preclude him from presenting the merits of his case, nor did they preclude him from seeking to compel discovery from Michelle to the extent that he asserted her responses were inadequate. Moreover, the trial court left open the possibility that Jerry could also seek leave of court if he contended further discovery was necessary. Jerry does not articulate what, if any, additional discovery was necessary to assist him in presenting his case.

14

express his objections to her withdrawal and considered whether they merited reconsideration of its grant of the withdrawal. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). However, we conclude that this denial of procedural due process was not harmful error. *See In re D.W.*, 498 S.W.3d 100, 118 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (conducting harm analysis after determining that party was denied procedural due process).

To reverse a judgment based on trial-court error, we must conclude that the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the appellate court. Tex. R. App. P. 44.1(a). Having reviewed the entire record, we conclude that the trial court's error did not probably cause the rendition of an improper judgment.[5] *In re Commitment of Jones*, 602 S.W.3d 908, 914 (Tex. 2020) (applying harmful-error rule when trial court erred by denying appellant's requested jury instruction). As we have already discussed, Jones argued the motion to compel on Jerry's behalf before the trial court allowed her to withdraw, and she made the arguments to the trial court that Jerry asserts on appeal should have been made. And as we will discuss in more detail below, we conclude that Jones's withdrawal did not cause the trial court to err by granting the motion to compel—the trial

---

[5] The trial court's error in this case is not the type of error that prevents us from determining whether the error probably caused the rendition of an improper judgment. *See In re Commitment of Jones*, 602 S.W.3d 908, 914 (Tex. 2020) ("The prevented-from-presenting prong, on the other hand, generally applies when something prevents an appellate court from evaluating harm under the improper-judgment prong," such as the submission of both valid and invalid theories of liability in single broad-form jury question.). In this case, the prevented-from-presenting prong does not apply because the record contains evidence enabling us to determine that the trial court's failure to allow Jerry to argue against Jones's withdrawal did not probably cause the rendition of an improper judgment. *See id.*

15

court granted the motion to compel based on Jerry's failure to comply with the discovery rules. In addition, there was no trial setting at the time that Jones was allowed to withdraw, and Jerry could have acquired new counsel in the two years that passed before the parties agreed to a property division to settle the case. *See, e.g.*, *Walton*, 23 S.W.3d at 148-149 (concluding that trial court's grant of motion to withdraw that did not comply with Rule 10 constituted harmless error because appellant had been afforded an additional fifty days before trial to secure new counsel and for that counsel to investigate case and prepare for trial). In the interim, Jerry was represented by other counsel, although he asserts that he never authorized that attorney to represent him and that attorney ultimately withdrew on the basis of communication difficulties. Furthermore, Jerry did not file his motion seeking temporary orders for attorneys' fees to be paid from the community estate until over a year later (in February 2020), and he did not present the motion for hearing until another year after that. In light of the lengthy span of time between the grant of Jones's motion to withdraw and the parties' final agreement to settle the case, we conclude that Jerry was not harmed by the trial court's error in not allowing him to argue his objections to Jones's motion to withdraw.

### D. Sua Sponte Continuance

Finally, Jerry contends that the trial court should have sua sponte continued the hearing and provided him with more time to further respond to the motion to compel. We cannot conclude that the trial court's decision to proceed with the hearing on Michelle's motion to compel was an abuse of its discretion. The grant or denial of a motion for continuance is a matter "within the trial court's sound discretion," *see Villegas*, 711 S.W.2d at 626, as is a trial court's sua sponte decision to continue a case, *see Dell Dev. Corp. v. Best Indus. Unif. Supply Co.*, 743 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1987, writ denied). After Jones had defended Jerry against

16

Michelle's motion to compel and for sanctions and the trial court had granted the motion to withdraw, Jerry did not suggest that he needed more time either to adequately represent himself on the motion to compel or to comply with the court's order to produce documents and adequately respond to interrogatories.[6]

Jerry did not contradict Jones's statements that she had "been trying to get the documents as part of the [motion to] compel. [Jerry] and I have been unable to communicate for well over a month. And then that's when he also start[ed] cc'ing Ms. Ancira's office into a lot of those communications"—communications that included statements threatening Michelle with criminal prosecution and "trying to ruin her job." Moreover, the motion for withdrawal of counsel had been on file for over a month, and Jerry acknowledges that he had notice of it. He also had notice of the motion-to-compel setting, which was moved to the same setting as the motion to withdraw at his request. Thus, Jerry had the opportunity to seek other counsel to represent him before the hearing on the motion to compel but instead chose to allow Jones to represent him. These facts distinguish this case from cases like *Villegas*, where an attorney was allowed to withdraw shortly before trial and the party was not allowed additional time to find new counsel and for that new counsel to prepare for trial. *See, e.g.*, *Villegas*, 711 S.W.2d at 625-27. Under

---

[6] Generally, when a party seeks a continuance based on withdrawal of counsel, he "must show that the failure to be represented at trial was not due to [his] own fault or negligence." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also Shadoian v. Shook*, No. 03-18-00242-CV, 2018 WL 3625766, at *2 (Tex. App.—Austin July 31, 2018, no pet.) (mem. op.) (concluding trial court did not abuse its discretion when appellant seeking continuance had not attempted to establish that he did not cause attorney's withdrawal through his own fault or negligence). In this case, Jerry asserts that because he was not allowed to argue to the court his objections to allowing Jones to withdraw, he did not have the opportunity to establish that he did not cause Jones's withdrawal through his own fault or negligence. We do not find this argument persuasive because Jerry did not seek a continuance and thus was never required to make this showing.

17

these circumstances, we cannot conclude that the trial court abused its discretion by not sua sponte continuing the hearing.

The supreme court held in *Villegas* that "when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.* at 626. In this case, more than two years passed after the trial court allowed Jones to withdraw before the parties reached the agreement that resulted in the final decree of divorce. We conclude that the trial court did not abuse its discretion by granting the motion to withdraw. We affirm the trial court's order granting the motion, and we overrule Jerry's first four issues. *See* Tex. R. App. P. 44.1(a); *Delgado v. Texas Workers' Comp. Ins. Fund*, No. 03-03-00621-CV, 2006 WL 663903, at *3 (Tex. App.—Austin Mar. 17, 2006, no pet.) (mem. op.) (stating that "even if the court erred by allowing the attorney to withdraw, we may only reverse the judgment if the error probably caused the rendition of an improper judgment or probably prevented [party] from properly presenting her case on appeal").

## II.     Motion to Compel

In two issues, Jerry contends that the trial court abused its discretion by awarding discovery sanctions against him at the November 2018 hearing that were "death penalty sanctions" and by awarding unreasonable financial sanctions against him. He requests that we reverse the trial court's ruling granting the motion to compel and remand for a new trial because (1) the discovery sanctions prevented him from properly presenting facts and issues to the court and (2) there was no evidence supporting the reasonableness of the attorneys' fees award. We review the trial court's order on a motion for discovery sanctions for an abuse of discretion. *See Altesse*

*Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 573 (Tex. 2018) (per curiam) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)).

### A. Discovery Sanctions

With regard to the first issue, Jerry complains that he was justified in not complying with the discovery requests and that the trial court should have considered and tested lesser sanctions before imposing case-determinative sanctions. Although Jerry urges that he either did not have the requested documents or that Michelle had access to those documents, neither Jerry nor his counsel provided evidence at the hearing demonstrating that Jerry had either timely objected to Michelle's discovery requests or timely and adequately responded. *See* Tex. R. Civ. P. 193.2, 196.2, 197.2. They did not deny that Jerry had produced no documents in response to the discovery requests or the motion to compel. This lack of timely and adequate objections and responses was the basis for the trial court's order.

The Texas Supreme Court long ago established the standard for determining whether an imposition of sanctions is just. *See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991). First, there must be a direct relationship between the offensive conduct and the sanction imposed; second, "just sanctions must not be excessive." *Id.* at 917. The trial court's order provided Jerry with additional time to comply with the discovery requests, and the court indicated at the hearing that it was giving Jerry this opportunity to adequately respond before imposing the sanction of precluding him from presenting claims related to requests that he had not responded to. *See* Tex. R. Civ. P. 215.2(b)(4) (trial court may order that disobedient party cannot support or oppose designated claims or defenses and may prohibit party from introducing designated matters into evidence). Moreover, although the trial court's order precluded Jerry from

19

further discovery, a permissible sanction under Rule 215(b)(1), it did not preclude him from filing a motion to compel discovery against Michelle to the extent that he believed her discovery responses were inadequate.[7] *See* Tex. R. Civ. P. 215.2(b)(1) (allowing trial court to issue order disallowing further discovery of any kind by party who fails to comply with proper discovery requests). The sanction of precluding Jerry from seeking additional discovery from Michelle without leave of court when he had not adequately responded to her discovery requests was a sanction "directed against the abuse and toward remedying the prejudice caused" to Michelle.

We conclude that precluding Jerry from seeking further discovery in the absence of his providing sufficient discovery responses to her is a just sanction that is not more severe than necessary to punish Jerry's discovery abuse. *See TransAmerican*, 811 S.W.2d at 917. The trial court's order did not preclude Jerry from presenting the merits of his case, and it satisfies the *TransAmerican* standard of just sanctions. *See id.* at 917-18. The trial court both considered and imposed sanctions that are less than "death-penalty sanctions." *See id.* at 918 (holding that "[d]iscovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit"). Thus, we affirm those portions of the trial court's order on the motion to compel that ordered Jerry to provide answers to interrogatories and to produce responsive documents that he had access to or actual or constructive possession of and that prohibited him from further discovery. We overrule Jerry's fifth issue.

---

[7] Jerry never moved to compel on the discovery responses that Michelle had previously filed.

20

## B. Attorneys' Fees

In his other issue challenging the trial court's order granting the motion to compel, Jerry contends that the trial court abused its discretion by awarding $2,000 in attorneys' fees payable to Ancira because there was insufficient evidence to establish that the award was reasonable. After the trial court issued its sanctions order in this case, the Texas Supreme Court issued an opinion that clarified the evidentiary burden of a party seeking to shift its attorneys' fees to its opponent as a sanction. *See Nath v. Texas Children's Hosp.*, 576 S.W.3d 707, 709-10 (Tex. 2019) (per curiam) (analyzing conclusory affidavits that did not substantiate either reasonable hours worked or reasonable hourly rate and concluding that evidentiary standard for fee-shifting awards recently clarified in *Rohrmoos* also applies to fee-shifting sanction); *see also Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 492, 498 (Tex. 2019) (clarifying evidentiary standards for shifting attorneys' fees and holding that sufficient evidence to establish reasonable and necessary fee should include description of particular services performed, who performed services, approximately when services were performed, and reasonable hourly rate for each attorney performing services). The supreme court explained in *Nath* that "[b]efore a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party." 576 S.W.3d at 709 (quoting *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008)). "Consequently, when a party seeks attorney's fees as sanctions, the burden is on that party to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Id.* (quoting *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016)).

21

In addition, Rule 215 provides that if a party's motion to compel is granted, the trial court shall award the moving party the reasonable expenses, including attorneys' fees, incurred in obtaining the order. Tex. R. Civ. P. 215.1(d). The rule specifically incorporates a reasonableness determination: "In determining the amount of reasonable expenses, including attorney fees, to be awarded in connection with a motion, the trial court shall award expenses which are reasonable in relation to the amount of work reasonably expended in obtaining an order compelling compliance . . . ." *Id.* Thus, a party seeking attorneys' fees as sanctions must put forth evidence of the fees it incurred. *Diana Convenience, LLC v. Dollar ATM, LLC*, No. 05-20-00936-CV, 2022 WL 1657033, at *5 (Tex. App.—Dallas May 25, 2022, no pet. h.) (mem. op.) (citing *Nath*, 576 S.W.3d at 709). And that evidence must satisfy the legal and evidentiary requirements established in *Rohrmoos*. *Id.*

In this case, Ancira represented to the trial court that Michelle had incurred $2,500 in attorneys' fees as a result of Jerry's discovery abuse, but Michelle offered no evidence, either attached to her motion or at the hearing, of the reasonable amount of attorneys' fees incurred. In its order, the trial court awarded $2,000 in attorneys' fees payable to Ancira without explanation of what made this a reasonable sanction. Consequently, the evidence is legally insufficient to support the $2,000 award of attorneys' fees. Because Michelle failed to present any evidence of reasonable expenses or attorneys' fees incurred, it would be inappropriate for us to remand for a redetermination of reasonable expenses and fees. *See id.* Instead, we reverse the award of attorneys' fees and render the judgment that the trial court should have rendered—no award of attorneys' fees to be paid to Ancira. We sustain Jerry's sixth issue.

### III. Motion for Temporary Orders on Attorneys' Fees

In his seventh issue, Jerry contends that the trial court abused its discretion by failing to rule on his motion for temporary orders seeking funds from the community-property estate for the purpose of retaining an attorney. *See* Tex. Fam. Code § 6.502(a)(4) (authorizing trial court to render temporary order that orders payment of reasonable attorneys' fees and expenses while suit for dissolution of marriage is pending). Although Jerry filed his motion in February 2020, he did not set it for hearing until February 3, 2021.[8] Michelle had also set for the same hearing a motion for temporary orders seeking a release from Jerry so that she could communicate with their mortgage company and a motion to compel Jerry to comply with the December 7, 2018 order for discovery and sanctions. Before taking up Jerry's motion for temporary orders, the court and the parties discussed the status of the mortgage and why the house had not yet been sold. During this discussion, Jerry agreed to settle with Michelle by allowing her to keep all the equity in the house if she would take care of the appraisal and selling the house. Before the court recessed for the parties to discuss their settlement agreement, Jerry reminded the court about his motion for temporary orders, and the court indicated that after the recess, it would consider the motion if the parties wanted it to. However, after the recess, Jerry and Michelle testified about the details of their agreement, Michelle's counsel proved up the divorce with testimony from Michelle, the court orally granted the divorce, and Jerry did not raise the issue of his motion again. Once the trial court granted the divorce, which it rendered "effective immediately," it could no longer grant payment of attorneys' fees pursuant to Section 6.502(a), which only allows a court to render such

---

[8] Jerry asserts that he set the motion for hearing on March 19, 2020, but that the hearing was cancelled by the court. Neither the setting of the hearing nor its cancellation are reflected in the appellate record. Even if the hearing was set and cancelled as Jerry asserts, the motion was not re-set for hearing until February 3, 2021.

23

temporary orders "[w]hile a suit for dissolution of marriage is pending." *See id.* Accordingly, we conclude that the trial court did not abuse its discretion by not ruling on Jerry's motion. We overrule Jerry's seventh issue.

## CONCLUSION

Having overruled Jerry's first four issues, we affirm the trial court's order granting Jones's motion to withdraw. Based on our conclusions that Jerry had not complied with Michelle's discovery requests and that the trial court's sanctions order prohibiting Jerry from further discovery was just, we affirm in part the order granting the motion to compel. Based on our conclusion that the trial court did not have sufficient evidence before it to support its award of $2,000 in attorneys' fees, we reverse that part of the order granting the motion to compel and render judgment that no attorneys' fees are awarded to be paid to Ancira. Having overruled Jerry's seventh issue, we conclude the trial court did not abuse its discretion by failing to rule on Jerry's motion for temporary orders.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed in Part, Reversed and Rendered in Part

Filed: August 19, 2022

24